UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TU QUOC PHAM,

      Petitioner,

    v.                          Case No.:  2:26-cv-00399-SPC-NPM

GARRETT RIPA *et al.*,

      Respondents,

_____/

## **OPINION AND ORDER**

Before the Court are petitioner Tu Quoc Pham's Petition for Writ of Habeas Corpus (Doc. 1)[1] and the government's response (Doc. 4).  For the below reasons, the Court grants the petition.

### **A. Background**

Pham is a native of Vietnam who entered the United States as a refugee in 1980 and later became a lawful permanent resident.  An immigration judge ordered his removal to Vietnam on July 30, 1996, because of a 1995 California conviction for possession of a controlled substance.  The government was unable to procure travel documents for repatriation to Vietnam, so it released Pham under an order of supervision on December 10, 1997.  Pham has complied with all terms of supervision for nearly 30 years.  In 2022, a

---

[1] Desiree Thien filed the petition as Pham's "next friend."  The respondent objects to her authority to do so.  The Court is satisfied that Thien satisfies the requirements for "next friend" standing established in *Whitmore v. Arkansas*, 495 U.S. 149 (1990).  (*See* Doc. 1-1).

California court vacated the 1995 conviction that led to the removal order. Pham's wife, children, and grandchildren are U.S. citizens, and he has a Petition for Alien Relative pending with U.S. Citizenship and Immigration Services.

Pham reported to the Tampa ICE office on December 17, 2025, for a scheduled check-in. ICE instructed him to apply for a Vietnamese passport, begin making arrangements to self-deport, and report back by May 19, 2026. Pham started the passport application process. But the Sarasota Sheriff's Office arrested Pham at his home the next day and handed him over to Immigration and Customs Enforcement ("ICE"). (Doc. 4-1 at 2). ICE revoked the order of supervision on December 23, 2025. Pham is currently detained at Alligator Alcatraz. He challenges the legality of his detention because there is no significant likelihood of removal in the reasonably foreseeable future.

**B. Jurisdiction**

Before addressing the merits of Pham's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first points to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim

> by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Pham does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order.  Nor does he ask the Court to review the removal order.  Rather, Pham challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply.  *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review.").  A decision in Pham's favor would not impair ICE's ability to execute the removal order.  The INA does not strip the Court of jurisdiction over this action.

## C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  *Id.*  Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.* The presumptively reasonable six-month period for detention pending removal commences at the beginning of the removal period. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue Pham's petition is premature because his current detention has not exceeded 180 days. They argue the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to

detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days.  As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies.  Pham has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  DHS made that determination in 1996, when it released Pham under an order of supervision. The U.S. has since negotiated repatriation agreements with Vietnam, but there is no indication Pham is eligible for repatriation under those agreements. And while Pham applied for a Vietnamese passport as instructed by ICE, there is no evidence that Vietnam is likely to grant the application.  The burden thus shifts to the respondents, but they make no attempt at rebuttal.

### D. Conclusion

The Court finds no significant likelihood Pham will be removed in the reasonably foreseeable future.  He is entitled to release from detention under *Zadvydas*.  If removal becomes likely in the reasonably foreseeable future,

DHS can detain Pham to "assur[e] [his] presence at the moment of removal."

*Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

Tu Quoc Pham Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Pham within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by informing Desiree Thien by phone when and where he can be collected. She has provided the following phone number: (617) 412-1107.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 5, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record